**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

WILLIS BROWN, individually and on behalf of all others similarly situated,

*Plaintiff*,

vs.

ALAMO MIT, LLC D/B/A MISSION MITSUBISHI

*Defendant*.
_______________________________________/

**CLASS ACTION**

**Case No. 5:26-cv-02195-XR**

**JURY TRIAL DEMANDED**

# FIRST AMENDED CLASS ACTION COMPLAINT

1. Plaintiff, Willis Brown ("Plaintiff"), brings this action against Defendant, Alamo Mit, LLC D/B/A Mission Mitsubishi ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Texas Business and Commerce Code §§ 302.101 ("TBCC").

## NATURE OF THE ACTION

2. This is a class action under the 47 U.S.C. § 227 *et seq*., the TCPA and the TBCC.

3. Defendant is an automobile dealership that provides vehicles and automotive services to consumers, based out of Texas.

4. To promote its goods and services, Defendant engages in aggressive telephonic sales calls to consumers with no regards for consumers' rights under the TCPA and TBCC, even after customers opt out from Defendant's telephonic sales calls.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

7. Venue is proper in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in this District, Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the Western District of Texas and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the Western District of Texas.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See S. Rep.* No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

11. Under the TCPA, a text message is a "call." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951–52 (9th Cir. 2009).

## **TEXAS BUSINESS AND COMMERCE CODE § 305.053**

12. A person who receives a communication that violates 47 U.S.C. § 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for damages in the amount provided by this section. Tex. Bus. & Com. Code § 305.053(a)(2).

13. Under the TBCC, a "telephone solicitation" expressly includes text messages. *See* Tex. Bus. & Com. Code § 302.001(7).

14. A plaintiff who prevails in an action for damages under this section is entitled to the greater of $500 for each violation or the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(b)(1)-(2).

## **PARTIES**

15. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Bexar County, Texas.

16. Plaintiff is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 9114 (the "9114 Number") that received Defendant's telephonic sales calls.

17. Plaintiff's 9114 Number is a wireless telephone that serves as Plaintiff's only telephone and his primary residential telephone. Plaintiff does not maintain a landline telephone. Plaintiff uses the

9114 Number exclusively for personal, family, and household purposes at his residence. Plaintiff does not use the 9114 Number for any business or commercial purpose.

18. Defendant is a Texas company whose principal place of business is at 9800 San Pedro, San Antonio, Texas 78216.

19. Defendant directs, markets, and provides its business activities throughout the United States and the State of Texas.

20. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

21. Beginning at least on January, 2025 (as shown below), Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's 9114 Number, from Defendant's 210-908-5821 number.



22. On or about January 7, 2025, Plaintiff responded to Defendant's 210-908-5821 number with the message "Just called and spoke to Tone and I don't think I would qualify but thank you. Please stop sending messages," using standard opt out language, in an attempt to opt-out of any further text message communications with Defendant, (as shown above).

23. Despite Plaintiff's unequivocal opt-out request, Defendant willfully disregarded Plaintiff's request and continued to bombard Plaintiff with unwanted telemarketing text messages.

24. In an apparent attempt to circumvent Plaintiff's opt-out request and evade detection, Defendant began using a different telephone number, (210) 427-4962, resuming its illegal conduct on March 18, 2025—more than two months after Plaintiff's opt-out.

25. The use of a second telephone number to contact the same consumer who had already opted out is indicative of a deliberate scheme to evade opt-out compliance rather than mere operational error or processing delay, and supports the inference that Defendant has failed to institute any centralized do-not-call procedures, (As shown below):



26. Defendant has the capability of immediately complying with Plaintiff's opt-out requests.

27. As demonstrated by the above screenshots, Defendant does not honor reasonable consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's telephone solicitations by telling Defendant not to contact him anymore, but Defendant continued to text message Plaintiff intentionally disregarding Plaintiff's instructions in order to solicit the sale of its services to Plaintiff.

28. The pattern of Defendant's conduct—specifically, its switch from one telephone number to another after receiving Plaintiff's opt-out request, and its continuation of telemarketing for an extended period thereafter—is inconsistent with the existence of any centralized do-not-call list, any system for recording opt-out requests, or any training of personnel regarding opt-out compliance. If Defendant maintained a centralized do-not-call list as required by 47 C.F.R. § 64.1200(d), Plaintiff's opt-out request would have been recorded and applied across all of Defendant's telephone numbers, rather than circumvented by switching to a different number.

29. Defendant's conduct demonstrates a systemic failure to institute procedures for maintaining a list of persons who request not to receive text messages from Defendant. Specifically, the fact that Defendant (a) received Plaintiff's express opt-out request on January 7, 2025, (b) thereafter switched to a different telephone number to continue soliciting Plaintiff rather than ceasing contact, and (c) continued sending telemarketing messages for more than three months after the opt-out request, indicates that Defendant lacks any centralized system for recording, processing, or honoring opt-out requests as required by 47 C.F.R. § 64.1200(d)(3).

30. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

31. On October 7, 2025, Plaintiff's counsel sent a written demand via certified mail, return receipt requested, to Defendant's registered agent at 9800 San Pedro, San Antonio, Texas

78216, requesting a copy of Defendant's written do-not-call policy as required by 47 C.F.R. § 64.1200(d)(1). As of the date of this Complaint, Defendant has failed to produce any written do-not-call policy or otherwise respond to counsel's request, supporting the inference that no such policy exists.

32. Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff's "Please stop sending messages" opt-out instructions.

33. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

34. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not maintain an internal do-not-call list.

35. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff, as reflected by the following facts: (a) Plaintiff made a clear and unambiguous opt-out request on January 7, 2025; (b) rather than honoring that request, Defendant switched to a different telephone number and resumed sending telemarketing text messages beginning on March 18, 2025—more than two months after Plaintiff's opt-out; (c) the messages continued for at least three additional months; (d) the switching of phone numbers demonstrates a deliberate pattern of evasion inconsistent with the existence of any centralized do-not-call list or compliance procedure; and (e) Defendant failed to produce any written do-not-call policy in response to counsel's written demand, further supporting the inference that no such policy has been instituted.

36. These facts strongly suggest that Defendant fails to ensure that requests by Plaintiff and the members of the Classes to opt-out of future communications are honored within a reasonable time.

37. Indeed Plaintiff's and the members of the Classes opt-out requests were not honored within a reasonable time from when the opt-out request was made.

38. Plaintiff's 9114 Number is a residential cellular telephone that Plaintiff uses exclusively for personal, family, and household purposes at his residence in Bexar County, Texas.

39. Pursuant to 47 C.F.R. § 64.1200(e), the rules set forth in §§ 64.1200(c) and (d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

40. Defendant's text messages were transmitted to Plaintiff's residential cellular telephone, and within the time frame relevant to this action.

41. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., promoting Defendant's auto sales.

42. The information contained in the text message advertises Defendant's various discounts and promotions, which Defendant sends to promote its business.

43. Upon information and belief, based on the specific facts alleged herein—including Defendant's failure to honor Plaintiff's explicit opt-out request, Defendant's deliberate switch to a different phone number to continue soliciting Plaintiff after the opt-out, the continuation of telemarketing for more than three months after the opt-out, and Defendant's failure to produce any written do-not-call policy in response to counsel's written demand—Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 C.F.R. § 64.1200(d)(1).

44. Upon information and belief, based on the facts that Defendant (a) failed to process or honor Plaintiff's January 7, 2025 opt-out request, (b) instead switched telephone numbers and resumed telemarketing, and (c) continued unsolicited telemarketing for an extended period demonstrating a complete absence of any internal compliance mechanism, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do not call list pursuant to 47 C.F.R. § 64.1200(d)(2).

45. Defendant sent the subject texts within this judicial district and, therefore, Defendant's violations of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

46. Defendant's texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

47. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted.

48. Specifically, Plaintiff never completed any type of form that clearly and conspicuously authorized Defendant to contact Plaintiff's residential cellular telephone with marketing text messages.

49. Plaintiff has no existing business relationship with Defendant

50. To the extent that Defendant ever had any consent to contact Plaintiff for marketing purposes, that extent was expressly revoked on at least January 7, 2025, when Plaintiff responded to Defendant with the message "Please stop sending messages."

51. Plaintiff is the subscriber and sole user of the 9114 Number and is financially responsible for phone service to the 9114 Number.

52. Plaintiff's 9114 Number is his residential telephone number which he uses exclusively for personal, family, and household purposes. Plaintiff does not maintain a separate landline telephone; the 9114 Number is his sole and primary telephone and serves as his residential telephone at his home in Bexar County, Texas. Plaintiff does not use the 9114 Number for any business or commercial purpose. The 9114 Number is listed under Plaintiff's name at his residential address, and Plaintiff uses the phone primarily at his residence to communicate with family members, friends, and for personal household matters.

53. Plaintiff registered his 9114 with the national do-not-call registry on March 7, 2021, and has been registered at all times relevant to this action.

54. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

55. The text messages originated from at least telephone numbers (210) 908-5821 and (210) 427-4962, numbers which upon information and belief are owned and operated by Defendant or on behalf of Defendant.

56. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

57. Defendant's unwanted telemarketing text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

58. Defendant's unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages. Each time, Plaintiff had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message.

59. Next, Plaintiff wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant's unwanted calls. In all, Defendant's violations of the TCPA caused Plaintiff to waste at least fifteen minutes of his time in addressing and attempting to stop Defendant's solicitations.

## CLASS ALLEGATIONS

**<u>PROPOSED CLASS</u>**

60. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

61. Plaintiff brings this case on behalf of the following "Classes" defined as follows:

> **<u>Do Not Call Registry Class</u>: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of promoting Defendant's products and services.**
>
> **<u>National Internal Do Not Call Class</u>: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's residential telephone number *after* making a request to Defendant to not receive future text messages.**
>
> **<u>Texas Do Not Call Registry Class:</u> All persons in Texas who from four years prior to the filing of this action (1) were sent a telephone solicitation by or on behalf of Defendant; (2) for the purpose of selling Defendant's products and services; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; or (4) where the person had opted out of Defendant's telephone solicitations yet continued to receive them.**

62. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each class but believes the Class members number in the several thousands, if not more.

63. Also excluded from the Classes are persons who, after making a request to Defendant to not receive future text messages, subsequently affirmatively opted-in to receive text messages from Defendant.

**<u>NUMEROSITY</u>**

64. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers listed throughout Texas without their prior express written consent and/or after they had requested to opt-out.

65. Defendant operates a high-volume text message marketing program to promote its automobile dealership, utilizing at least two distinct telephone numbers—(210) 908-5821 and (210) 427-4962—to send promotional messages to consumers.

66. The commercial nature and format of Defendant's text messages—which advertise specific vehicle promotions, discounts, and sales events—indicate that they are sent through an automated or semi-automated marketing platform designed to reach large numbers of consumers simultaneously.

67. The fact that Defendant maintains multiple telephone numbers for marketing purposes and employs a systematic texting operation further supports the inference that Defendant's practices affect a substantial number of consumers beyond Plaintiff. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

68. Moreover, upon information and belief, Defendant's text message marketing program is operated through a commercial messaging platform or third-party vendor that maintains records of all outbound messages, recipient telephone numbers, and opt-out requests. These records, which are within Defendant's possession, custody, or control, will identify the members of the Classes.

69. The existence of Defendant's systematic marketing operation—evidenced by the use of multiple telephone numbers, the commercial formatting of messages, and the volume and frequency of texts sent to Plaintiff alone—supports the reasonable inference that similarly situated consumers have received the same or similar telemarketing text messages from Defendant.

70. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

71. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

[1] Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

[2] Whether Defendant violated 47 C.F.R. § 64.1200(c)

[3] Whether Defendant violated 47 C.F.R. § 64.1200(d);

[4] Whether Defendant violated the TBCC;

[5] Whether Defendant adhered to requests by members of the Classes to stop sending text messages to their telephone numbers;

[6] Whether Defendant keeps records of text recipients who revoked consent to receive texts;

[7] Whether Defendant has any written policies for maintaining an internal do not call list

[8] Whether Defendant's conduct was knowing and willful; and

[9] Whether Defendant is liable for damages, and the amount of such damages.

72. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits telephonic sales calls to consumers after they had requested to be opted out and at times prohibited by law, Plaintiff and the members of the Classes will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

73. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

74. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**SUPERIORITY**

75. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

76. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

77. Plaintiff repeats and realleges the paragraphs 1 through 76 of this Complaint and incorporates them by reference herein.

78. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

79. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[1]

80. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

81. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

82. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

83. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

84. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**COUNT II**
**VIOLATION OF 47 U.S.C. § 227(c)(2)**
**(Individually and on behalf of the National Internal Do Not Call Class)**

85. Plaintiff re-alleges and incorporates paragraphs 1 through 76 as if fully set forth herein.

86. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

87. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) or any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity

> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6).

88. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

47 C.F.R. § 64.1200(e).

89. Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive calls from Defendant.

90. Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' requests.

91. Based on the specific facts alleged herein—including Defendant's failure to honor Plaintiff's opt-out, Defendant's deliberate switch to a new telephone number to circumvent the opt-out, the extended duration of continued telemarketing over multiple months, and Defendant's complete failure to produce any written do-not-call policy in response to a formal written demand—Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of Defendant, pursuant to 47 C.F.R. § 64.1200(d).

92. Because Plaintiff and the Internal Do Not Call Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

93. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

94. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

95. Plaintiff and the Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

96. Plaintiff and the National Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT III**
**<u>Violation of the TBCC § 305.053</u>**
**(On Behalf of Plaintiff and the Texas Do Not Call Registry Class)**

97. Plaintiff repeats and realleges paragraphs 1 through 76 of this Complaint and incorporates them by reference herein.

98. The TBCC provides: "A person who receives a communication that violates 47 U.S.C Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for: (1) an injunction; (2) damages in the amount provided by this section; or (3) both an injunction and damages." Texas Bus. & Com. Code §305.053(a).

99. As set forth above, Defendant violated 47 C.F.R § 64.1200(c) of the TCPA's implementing regulations by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry.

100. As set forth above, Defendant violated 47 C.F.R § 64.1200(d) of the TCPA's implementing regulations by initiating, or causing to be initiated, calls for telemarketing purposes

without having first instituted procedures (which meet the minimum standards outlined in 47 C.F.R § 64.1200(d)(1)-(6)) for maintaining a list of persons who request not to receive telemarketing calls from Defendant.

101. Moreover, 47 C.F.R § 64.1200(e) provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

102. Under the TBCC, Plaintiff and the Class members are entitled to recover $500 in statutory damages for each violative text message. Texas Bus. & Com. Code §305.053(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes;

c) An order declaring that Defendant's actions, set out above, violate the TCPA and TBCC;

d) An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Classes;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or

transmittal of the calls as alleged herein.

Dated: July 20, 2026

Respectfully Submitted,

**Shamis & Gentile, P.A.**
*/s/ Christopher Berman*
Christopher E. Berman, Esq.
cberman@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

*Counsel for Plaintiff and the Classes.*